# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| AMERICAN TRAFFIC SOLUTIONS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:12-cv-00504-RC |
| | ) | |
| B&W SENSORS LLC, | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE, AND BRIEF IN SUPPORT</u>

## Table Of Contents

*Description*                                                                   *Page No.*

I.      **INTRODUCTION**..................................................................................... 1

II.     **STATEMENT OF FACTS**..................................................................... 1

III.    **ANALYSIS** ............................................................................................. 5

    A.  **B & W Is Not Within the Personal Jurisdiction of This Court**....................... 5

        *1.  This Court Does Not Have General Jurisdiction Over B & W* ............... 7

            *i.  B & W's Limited  Contacts with This District
                Show Lack of Personal Jurisdiction in Texas* ................................ 8

            *ii.  Exercise of Personal Jurisdiction Over B & W Would
                Be Improper and Inconsistent With the Notions of Fair Play
                and Substantial Justice* ................................................................. 10

        *2.  This Court Does Not Have Specific Jurisdiction Over B & W*............... 11

    B. **Venue Is Improper In This District** ................................................................. 13

IV.     **CONCLUSION** ...................................................................................... 13

**Certificate Of Service** ............................................................................................. 14

## Table Of Authorities

*Cases*                          *Page*

*3D Sys., Inc. v. Aarotech Lab, Inc. et al.*, 160 F.3d 1373 (Fed. Cir. 1998) ......................... 11

*Advanced Biological Lab., SA, v. Ameripath, Inc.*, 2008 U.S. Dist. LEXIS 30757
    (E.D. Tex. 2008)(Judge Leonard Davis).................................................................... 11

*Advanceme, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669
    (E. D. Tex., 2006)(Judge Leonard Davis).................................................................. 9

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) ............................... 6

*Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111 (1987) ................................... 7

*Bellorin v. Bridgestone/Firestone, Inc.*, 236 F.Supp.2d 670
    (W.D. Tex 2001)(Judge Ferguson) ............................................................................ 9

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360-61
    (Fed. Cir. 2006)....................................................................................................... 7, 11

*Brown v. Crow's Nest Investors, LLC*, 4:12-cv-136, Dkt. No. 37 (E. D. Tex.
    Nov. 8, 2012)(Bush, Mag J.)................................................................................... 5, 7

*Bullion v. Gillespie*, 895 F.2d 213 (5th Cir. 1990) ................................................................ 5

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985) ........................................... 7

*Central Freight Lines, Inc. v. APA Transport Corp.*, 332 F.3d 376 (5th Cir. 2003) ........... 7, 8

*Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707 (Tex. App. 2000)...................... 9

*Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,
    815 S.W.2d 223, 226 (Tex. 1991). ....................................................................... 7, 12

*Frito-Lay North America, Inc. v. Medallion Foods, Inc.*, 4:12-cv-74, Dkt. No. 42
    (E.D. Tex. Mar. 30, 2012)(Mazzant, Mag. J.) ........................................................... 6

*Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999)................................... 12

*International Shoe Company v. Washington,* 326 U.S. 310 (1945)............................... 5, 6, 10

*Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992) ....... 8

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)................................................ 6

*Langton v. Cheyond Commun., L.L.C.*, 282 F.Supp.2d 504, 508 (E.D. Tex. 2003)
(Davis, J.). ........................................................................................ 6

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)... 7, 8

*Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003) ..................................... 6

*Revell v. Lidov,* 317 F.3d 467 (5th Cir.2002)(Davis, J.) ........................................................ 9

*Rush v. Savchuk*, 444 U.S. 320, 329 (1980)........................................................................ 12

*Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993)........................ 7, 11

*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed.Cir. 2003).................. 6, 7

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind.*, 563 F.3d 1285, 1297 (Fed. Cir., 2009) .............. 7

*Trintec Indus. V. Pedre Promotional Prods.*, 395 F.3d 1275 (Fed. Cir. 2005) ...................... 6

*VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990)............. 13

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997)........... 9

**Statutes**                                                                        **Page**

28 U.S.C. §1400(b) ............................................................................................. 13

28 U.S.C. §1406(a) ............................................................................................... 1

Rule 12(b)(2), Federal Rules of Civil Procedure ................................................. 1

Rule 12(b)(3), Federal Rules of Civil Procedure ................................................. 1

Tex. Civ. Prac. & Rem.Code Ann. §§ 17.041-.045 ............................................. 6

Texas Statutes - Section 542.2035: LIMITATION ON MUNICIPALITIES........................ 2

**Misc.**                                                                            **Page**

16 Moore's Federal Practice, §108.41[3] at 108-49 (3d ed.)................................... 8

# I. **INTRODUCTION**

Defendant B & W SENSORS LLC ("B & W") by and through its attorneys, pursuant to Rule 12(b)(2) & (3) of the Federal Rules of Civil Procedure and 28 U.S.C. §1406(a) respectfully moves this Court to dismiss this case for lack of personal jurisdiction and improper venue.

This is a patent infringement action against a Missouri company, also alleging related torts, related to video speed detection systems for motor vehicles. B & W has not sold, offered for sale, manufactured or imported the accused products in Texas; in fact, video speed detection systems like those offered by B & W are statutorily forbidden in Texas municipalities. The only possible connection between Plaintiff and Texas has been non-commercial testing of the accused product by a Texas-based entity. Nevertheless, Plaintiff AMERICAN TRAFFIC SOLUTIONS, INC ("ATS") filed the Complaint for this action in the Eastern District of Texas ("EDTX"). Because B & W's actions and contacts with the State of Texas do not show that B & W is within the personal jurisdiction of this Court and B & W has not purposefully availed itself of this forum, this case should be dismissed.

# II. **STATEMENT OF FACTS.**

B & W is a limited liability company organized and existing under the laws of the State of Missouri and having a place of business at 3668 Geyer Road, Suite 200, St. Louis, Missouri 63127. *Declaration of Mark Jackson, attached hereto as Exhibit A, at ¶5.* B & W is in the business of providing, servicing, and operating speed detection devices wherein B & W identifies violators of speed limits, sends speeding citations to the violators, collects fines from the violators, and then forwards a portion of those fines to the municipalities within which the B & W devices were positioned. *Exhibit A, at ¶6.*

B & W does not now manufacture, use, import, offer to sell, sell, or induce or contribute to others to manufacture, use, import, offer to sell, or sell any of its products in the State of

Texas.  *Exhibit A, at ¶23.*  B & W has also not made any sales or sales presentations for the accused products in Texas.  *Exhibit A, at ¶24.*  B & W has sold no B & W products of any type to any resident of Texas.  *Exhibit A, at ¶25.*  In fact, B & W cannot sell or use any of its MVST speed detection/enforcement products in Texas because such devices are outlawed under the Texas Statutes.  *See Texas Statutes - Section 542.2035: LIMITATION ON MUNICIPALITIES.*  B & W commercially uses its products only in Missouri and in other States, but <u>not</u> in Texas.  *Exhibit A, at ¶26.*

B & W does not now establish, nor has it ever established, a distribution channel to import its products into the State of Texas or distribute its products throughout the State of Texas.  *Exhibit A, at ¶36.*  B & W has never shipped its products directly or indirectly to the State of Texas through an established B & W distribution channel. *Exhibit A, at ¶37.*  Prior to the present lawsuit, B & W has never been involved in any lawsuit within the State of Texas.  *Exhibit A, at ¶38.* B & W does not now enter, nor has it ever entered, into any contracts, licenses, supply agreements, or any other type of agreement whereby B & W agreed to perform any services in the State of Texas.  *Exhibit A, at ¶27.*

B & W does not now have, nor has it ever had, its employees travel to Texas to sell products, solicit business, participate in trade shows, meet with distributors, perform any warranty works, or perform any other commercial, business related functions.  *Exhibit A, at ¶28.*  B & W does not now, nor has it ever, made price quotes or offered for sale any of its products within the State of Texas.  *Exhibit A, at ¶29.*  B & W does not now advertise, nor has it ever advertised, in print, radio, television, or any other media originating from Texas or any such media that targets Texas for distribution or sale.  *Exhibit A, at ¶30.*  B & W does not now provide, nor has it ever provided, any samples of any of its products to induce any sales of any kind to any entity in the State of Texas.  *Exhibit A, at ¶31.*

2

B & W does not now use, nor has it ever used, an "interactive" website to solicit business in the State of Texas, or anywhere else. *Exhibit A, at ¶32.* The B & W website does not now permit, nor has it ever permitted, users to complete orders through the website, nor does the website list prices. *Exhibit A, at ¶33.* B & W's website does not now provide, nor has it ever provided, any links for a user to purchase B & W's products through the website. *Exhibit A, at ¶34.* B & W's website does not now provide, nor has it ever provided, order forms for its customers to purchase B & W products. *Exhibit A, at ¶35.*

All of the B & W employees and officers reside in the St. Louis, Missouri area. *Exhibit A, at ¶7.* B & W does not now, nor has it ever had, any directors, officers, agents, or employees who reside in the State of Texas. *Exhibit A, at ¶8.* B & W is not now, nor has it ever been, incorporated in the State of Texas. *Exhibit A, at ¶9.* B & W has no offices located within the State of Texas. *Exhibit A, at ¶10.* B & W does not hold any business licenses issued by the State of Texas. *Exhibit A, at ¶11.* B & W does not now own, use, lease, or possess, nor has it ever owned, used, leased, or possessed, any real or personal property in the State of Texas. *Exhibit A, at ¶12.* B & W does not now have, nor has it ever had, any offices, business operations, storage facilities, warehouses, business places, distribution points, or any other infrastructures within the State of Texas. *Exhibit A, at ¶13.* B & W does not now have, nor has it ever had, any subsidiaries or parent companies located within the State of Texas. *Exhibit A, at ¶14.* B & W does not now maintain, nor has it ever maintained, any corporate records in the State of Texas. *Exhibit A, at ¶15.*

B & W is not now listed, nor has it ever been listed, in the Texas telephone or classified directory. *Exhibit A, at ¶16.* B & W does not now maintain, nor has it ever maintained, any telephone numbers, facsimile numbers, or mailing address in the State of Texas. *Exhibit A, at*

3

*¶17.*  B & W does not now hold, nor has it ever held, itself out as being present in the State of Texas in any other way.  *Exhibit A, at ¶18.*

B & W does not now pay, nor has it ever paid, income taxes, payroll taxes, real property taxes, or personal property taxes to any state or local taxing authority in the State of Texas.  *Exhibit A, at ¶19.*  B & W does not now maintain, nor has it ever maintained, a bank account with a financial institution in the State of Texas.  *Exhibit A, at ¶20.*  B & W does not now insure or act, nor has it ever insured or acted, as surety to any person, property, or risk located in the State of Texas. *Exhibit A, at ¶21.*  B & W does, nor does now have, nor has it ever had, a registered agent authorized to accept service of process in the State of Texas.  *Exhibit A, at ¶22.*

B & W used the testing services of the Texas Transportation Institute ("TTI") of College Station TX with an address of: The Texas A&M University System, 3135 TAMU, College Station, TX 77842-3135.  *Exhibit A, at ¶39.*  B & W used the services of TTI only to verify the accuracy of B & W's MVST systems for use across the United States, but not in the State of Texas.  *Exhibit A, at ¶40.*  The only agreements between B & W and TTI were a standard Agreement For Non-Disclosure Of Proprietary Information and a letter agreement of February 19, 2010 that describes the accuracy verification process to be conducted by TTI.  *Exhibit A, at ¶41.*

Plaintiff, ATS, is a corporation organized under the laws of Arizona, with a principal place of business in Tempe, Arizona.  *Complaint filed for the Present Action ("the Complaint") at ¶3.*  There are no known ATS witnesses who are located within or have any connection to Texas.   The named inventor for the two patents at issue in the present case is Mr. Jigang Wang and it appears form Mr. Wang's affidavit that he is not a resident of Texas. *Declaration of Mr. Jijang Wang submitted by ATS in connection with the ATS Motion for Preliminary Injunction("the Wang Affidavit") at ¶ 1 & page 4.*  Of the three attorneys listed in the Complaint,

two of the attorneys are not residents of Texas.  *Complaint at page 10.*  Instead, one is a resident of Seattle, Washington, another is a resident of Tempe, Arizona, and only one attorney (apparently the local counsel for filing papers with this Court) is located in Texas.  *Id.* ATS identified B & W's limited non-commercial use of an MVST system during testing at TTI as the sole proof of this Court's jurisdiction over ATS in the current lawsuit.  *Complaint at ¶ 7.*

ATS alleges that it maintains a business relationship with several so-called "ATS Customers" including: Arnold, Bel-Nor, Beverly Hills, Brentwood, Bridgeton, Calverton Park, Clayton, Country Club Hills, Creve Coeur, Dellwood, Ellisville, Florissant, Ferguson, Hazelwood, Moline Acres, Northwoods, Richmond Heights, St. Ann, St. John, St. Louis, and Webster Groves – all of which are suburbs of St. Louis, Missouri, and all which are within the Eastern District of Missouri ("EDMO").  *Complaint at ¶ 33.*  Thus, many ATS witnesses and documentary evidence can be found or made readily available within the EDMO.

Finally, it should be noted that B & W is filing a Complaint for Declaratory Judgment in the EDMO on the same patent infringement issues as exist in this case.  Thus, this case can be readily be refiled as a counterclaim in the EDMO where it can be part of the existing case there without the loss of any ATS rights to protect any of its causes of action within the present lawsuit in this Court.

### III.  <u>ANALYSIS</u>

#### A.  <u>B & W Is Not Within the Personal Jurisdiction of This Court.</u>

B & W has insufficient contacts with the State of Texas to find B & W is within the personal jurisdiction of this Court.

The due process requirements for jurisdiction were enunciated in *International Shoe Company v. Washington,* 326 U.S. 310 (1945).  Once jurisdiction is challenged, it is the Plaintiff's burden of demonstrating a jurisdictional basis for its claim.  *Bullion v. Gillespie*, 895

F.2d 213 (5th Cir. 1990).  The jurisdictional analysis is two-pronged, requiring consideration first of whether the defendants are subject to personal jurisdiction under relevant state statutes or rules, and then whether the exercise of personal jurisdiction comports with the U.S. Constitution's due process clause.  *Brown v. Crow's Nest Investors, LLC*, 4:12-cv-136, Dkt. No. 37 (E.D. Tex. Nov. 8, 2012) (Bush, Mag. J.).

Texas, like many other States, has a long-arm statute that states a nonresident does business in Texas if it:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.  *See Tex. Civ. Prac. & Rem.Code Ann. §§ 17.041-.045.* The Texas long-arm statute extends to the full extent permitted by the Due Process Clause. *Frito-Lay North America, Inc. v. Medallion Foods, Inc.*, 4:12-cv-74 (E.D. Tex. Mar. 30, 2012) (Mazzant, Mag. J.)(*citing Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003). Because Texas's long-arm statute authorizes personal jurisdiction to the full extent allowed by due process, the jurisdictional analyses under each prong are the same.  *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Langton v. Cheyond Commun., L.L.C.*, 282 F.Supp.2d 504, 508 (E.D. Tex. 2003)(Davis, J.).

There are two types of personal jurisdiction, general and specific.  *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275 (Fed. Cir. 2005).  For a court to exercise general jurisdiction, a defendant's contacts with the forum must be continuous and systematic, and "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities."  *International Shoe Co. v. Washington*, 326 U.S.

310, 318 (1945); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779 (1984)(expressing doubt that monthly sale of 15,000 magazines within state is so "substantial" as to justify general jurisdiction); *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed.Cir.2003)(noting that contacts must be extensive, continuous, and systematic); *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003); *Brown v. Crow's Nest Investors, LLC*, 4:12-cv-136, Dkt. No. 37 (E.D. Tex. Nov. 8, 2012)(Bush, Mag. J.)(same).

On the other hand, a court may exercise specific jurisdiction only where the defendant's contacts with the forum are insufficient to justify general jurisdiction and if the plaintiff's claim "arises out of" or " relates to" the defendant's in-state activity.  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360-61 (Fed. Cir. 2006); *Silent Drive,* 326 F.3d at 1200. Additionally, there must be a "substantial connection" between the nonresident defendant and Texas arising from purposeful action or conduct directed here.  (*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-73 (1985); *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind.*, 563 F.3d 1285, 1297 (Fed. Cir. 2009)(stating "substantial connection with the forum, even a single act can support jurisdiction").  Thus, for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *See Guardian Royal Exch, Assurance v. English China Clays,* 815 S.W. 2d 223, 229-33; *Rush v. Savchuk*, 444 U.S. 320, 329 (1980); *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415 (5th Cir. (1993)("The 'substantial connection' between the defendant and the forum state necessary for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum state."(*citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 111 (1987)).

### *1.  This Court Does Not Have <u>General</u> Jurisdiction Over B & W.*

As one court of appeals has explained, to exercise general jurisdiction, a defendant's contacts must be of such a nature and number that "it would be fundamentally fair to require it to answer in [the subject court] in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003)(emphasis in original).  Accordingly, "[t]he minimum contacts inquiry is broader and more demanding." *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992).  Courts are "reluctan[t] to assert general jurisdiction over . . . a foreign corporation even when the contacts with the forum are quite extensive." *16 Moore's Federal Practice,* §108.41[3] at 108-49 (3d ed.).

When the facts of the present case are analyzed under the above law, the analysis shows there is no basis for the Court to exercise general jurisdiction due to B & W's lack of contacts with the State of Texas.

### i.  B & W's Limited Contacts with This State of Texas Shows Lack of Personal Jurisdiction in The State of Texas.

B & W's contacts with the State of Texas are essentially non-existent, and certainly do not warrant a conclusion that "it  would be fundamentally fair to require B & W to answer in this district in any litigation arising out of any transaction or occurrence taking place anywhere in the world." *Purdue Research,* 338 F.3d at 787 (emphasis in original).

It is critical to note that there have been no sales, no offers to sell, no manufacture, and no importation of any B & W products into the State of Texas -- and this includes the accused products in the present action.  Additionally, B & W: (1) is a privately-held Missouri corporation with offices only in Missouri; (2) does not owns any property nor maintains any offices in Texas; does not have any agents or employees in the State of Texas; (3) does not advertise in the State of Texas; (4) has not made any sales or sales presentations for the accused products or any other B & W product in the State of Texas; and (5) has no known business in the State of Texas.

Although B & W maintains an Internet website, merely operating a website that Texas residents can access along with Internet users worldwide does not create substantial, systematic and continuous contacts with the State of Texas. *See Central Freight Lines, Inc. v. APA Transport Corp.*, 332 F.3d 376 (5th Cir. 2003).  The Fifth Circuit has generally adopted the sliding-scale test put forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997).  *Advanceme, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669 (E.D. Tex. 2006)( Davis, J.);  *Id.; see also Revell v. Lidov,* 317 F.3d 467 (5th Cir. 2002).  A passive website, which only allows the owner to post information to the site, is not sufficient to establish personal jurisdiction. *Revell,* 317 F.3d at 470.  A website whose owners engage in repeated online contacts with forum residents through the site will likely satisfy the minimum contacts requirement.  *Id.*  When Texas courts have found personal jurisdiction in cases discussing a website as a contact with the State of Texas, there have been numerous types of substantial contacts to support personal jurisdiction in addition to the Internet website.  *See e.g., Bellorin v. Bridgestone/Firestone, Inc.*, 236 F.Supp.2d 670 (W.D. Tex 2001)(website alone not enough for personal jurisdiction, but coupled with wholly owned subsidiary operating business in Texas raised possibility of personal jurisdiction);  *See also Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707 (Tex. App. 2000).

These cases clearly indicate that unless the claim arises from an Internet website purchase by a customer in the forum state, there has to be more to establish personal jurisdiction than merely a website that transacts business when the claims do not arise from a website purchase by a customer in the forum state.  Irrespective of whether a particular case involves a website, these cases show that the test in Texas still requires that the contacts with the State of Texas either give rise to the claim or the defendant must have continuing and systematic contacts with the State of Texas.

B & W's website does not meet any of those legal requirements.  As do most companies, B & W maintains a website on the Internet that is accessible by people worldwide.  But B & W's website has never specifically targeted businesses or individuals in the State of Texas.  Additionally, the B & W website is in no way an "interactive" website where B & W clearly does business over the Internet by entering into contracts with residents of other States that would allow a customer to place a complete order just by placing the order and paying the price shown on the website.  Thus, the B & W website is a "passive" website that does not include any characteristics that would support a finding of personal jurisdiction over B & W in the present case.

In light of the above law and facts, B & W has no contacts with the State of Texas that would allow any court in the State of Texas to have any type of personal jurisdiction over B & W.  Additionally, because this action involves no individual purchasing B & W's products from Texas nor any other commercial activities involving B & W's products within the State of Texas, personal jurisdiction cannot exist over the corporate entities merely based on their operation of a website that Texas residents might view.  Instead, the Texas long-arm statue requires minimum contacts specifically with the State of Texas that actually give rise to the claim or continuous or systematic contacts with the State of Texas.  Here, there are no website contacts with the State of Texas giving rise to the claim, and there are no website contacts with Texas that are systematic and continuous.  Therefore, ATS cannot obtain jurisdiction merely by claiming that Texas residents may have been wronged by B & W.

### ii.  *Exercise of Personal Jurisdiction Over B & W Would Be Improper and Inconsistent With the Notions of Fair Play and Substantial Justice.*

Even if the Court determines that B & W has sufficient minimum contacts in this district, it should nonetheless withhold exercising personal jurisdiction over B & W because to do so

would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.  The factors relevant to this determination are (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies.  *Ruston Gas Turbines v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).  These factors counsel against personal jurisdiction.

First, B & W's lack of meaningful contacts with this district makes litigating here unduly burdensome.  No documents or witnesses that have anything to do with B & W's allegedly infringing products are located anywhere in this state.  For this reason, it is unduly burdensome and inefficient to make B & W shoulder the costs of litigating in this state.

As to this state's (and this district's) interests, the B & W does not reside in the State of Texas, much less this district.  The allegedly infringing products were designed, made, and sold outside of Texas.  B & W does not maintain any office or facility in Texas.   Additionally, B & W does not market the allegedly infringing products in Texas.  As a result, Texas has no interest, in B & W's allegedly infringing products.  Finally, and importantly, not a single customer contact by B&W is alleged to have been in Texas, and there has been no allegation of any other alleged tortious act that occurred within the State of Texas.

For these reasons, this Court does not have general jurisdiction over B & W.

### 2. This Court Does Not Have <u>Specific</u> Jurisdiction Over B & W.

This court may exercise specific jurisdiction over B & W only if ATS can demonstrate that B & W's activities were purposefully directed at Texas and the current action "arises out of" or "relates to" the defendant's in-state activity.  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360-61 (Fed. Cir. 2006); *Silent Drive,* 326 F.3d at 1200.  In the context of a patent infringement lawsuit, specific jurisdiction can be exercised only if the ATS shows that the

infringement claim arises out of or relates to activities directed at residents of the State of Texas. *See 3D Sys., Inc. v. Aarotech Lab, Inc. et al.*, 160 F.3d 1373 (Fed. Cir. 1998); *Advanced Biological Lab., SA, v. Ameripath, Inc.*, 2008 U.S. Dist. LEXIS 30757 (E.D. Tex. 2008)(Davis, J.).  More particularly, when an out of state defendant - such as B & W - is accused of patent infringement, the Federal Circuit requires specific evidence that the defendant infringed in the forum state.  *Id; See also Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999). Thus, for a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.  *See Guardian Royal*, 815 S.W.2d at 229-33; *Rush*, 444 U.S. at 329, 100 S.Ct. 571.

Significantly, the sole contact between B & W and Texas is the testing of the accused product by TTI to check the accuracy of B & W's speed detection device.  That TTI testing did <u>not</u> involve any commercial use of the B & W accused product and no violators were cited for speed infractions.  TTI's entire purported "use" of the accused products was strictly non-commercial in nature and did not constitute B & W an action by B &W that would qualify to show that B & W was purposefully directing activities at the State of Texas or placing goods into the stream of commerce in Texas.  Thus, there simply are no such contacts between B & W or the accused products and this state or district.  Additionally, as noted before, the allegedly infringing products were never sold in the State of Texas and the accused product was designed, manufactured, and developed in Missouri, and were only sold in Missouri and elsewhere, but not in the State of Texas.

The same analysis applies to Count III for Tortious Interference and Count IV for Unfair Competition as filed by ATS in its Complaint.  With regard to Count III, ATS alleges that B & W engaged in tortious interferences with the entities listed by ATS in the Complaint, the so-called "ATS Customers."  A review of all those entities reveals that none of those "ATS

Customers" are residents of Texas, and that all are residents of the State of Missouri with only a single exception, and even that exception is a resident of Tennessee.  With regard to Count IV, B & W has not sold or offered for sale any of the allegedly infringing products in Texas, thus the alleged act of unfair competition cannot be based on any B & W actions within the State of Texas.

Accordingly, there is no basis for this Court to exercise specific jurisdiction over B & W, and this action should be dismissed.

### B. Venue Is Improper In This District.

A suit for "patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *28 U.S.C. §1400(b)*.  Where, as here, the defendant is a corporation, to determine venue, the Court must determine whether the corporation would be subject to personal jurisdiction in the district if the district was a separate state. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990).

Given that B & W is not subject to personal jurisdiction, venue is not proper in the Eastern District of Texas, nor in any other district within the State of Texas.  For this reason, B & W respectfully requests that this Court dismiss the lawsuit on the basis of improper venue.

## V.  CONCLUSION.

For the foregoing reasons, this B & W respectfully moves this Court to dismiss this action for lack of personal jurisdiction over B & W and improper venue, and grant B & W such other and further relief to which it is entitled.

Dated:  November 12, 2012                Respectfully submitted,

                                          */s/ Craig Tadlock*
                                         Craig Tadlock
                                         State Bar No. 00791766
                                         TADLOCK LAW FIRM PLLC
                                         2701 Dallas Parkway, Suite 360
                                         Plano, Texas 75093
                                         Phone: 903-730-6789
                                         Email: craig@tadlocklawfirm.com

                                         *Attorney for Defendant*
                                         *B & W Sensors LLC*

*Of Counsel to B & W Sensors LLC:*

Douglas E. Warren, Esq.
Missouri Bar No. 49,333
Post Office Box 6727
Chesterfield, Missouri  63006
Phone: 636-519-5257
Fax:     636-536-0517
Email:  dewarren@charter.net

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 12th day of November 2012, the foregoing was delivered to the following individuals via the operation of the Court's electronic filing system.

Mr. Andy Taylor , Esq.
ANDY TAYLOR & ASSOCIATES, PC
2668 Highway 36S, #288
Brenham TX  77833
Telephone:  (713) 222-1817
Facsimile:   (713) 222-1855
Taylor@AndyTaylorLaw.com

Mr. George J. Hittner, Esq.
AMERICAN TRAFFIC SOLUTIONS, INC.
1330 West Southern Avenue Tempe, AZ
85282 Telephone:  (480) 596 4704
Facsimile:   (480) 967 7131
George.Hittner@atsol.com

Mr. Brian C. Park, Esq.
(Pro Hac Vice pending)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, Washington  98101-4109
Telephone:  (206) 386-7542
Facsimile:   (206)  386-7500
BCPark@stoel.com

*/s/ Craig Tadlock*_____
Craig Tadlock